The next case this morning is 523-0163, Keeble v. Rubin. Arguing for the appellant is Eunsoo Nam. Arguing for the appellee is Jenna Siever. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note, only the clerk of the court is allowed to proceed to record these proceedings today. Good morning, counsel. How are you all? Good morning, your honors. Good morning. Good morning. Before we delve off into our oral arguments, we need to address, and I've got them pulled up here, I believe the state has filed two motions to cite additional authority, and I think if I looked them over, there's one for each issue, I believe, recent Supreme Court decisions. Is that correct? It's actually, well, I guess Ms. Siever can talk about it, but I think it's both for the second argument. That's correct. I see that now. Okay, so it's basically a joint motion. So I'm assuming that neither has an objection. That's correct, your honor, and I'm going to talk a little bit about the second argument today if we do have time. So yeah, I will address the court's questions regarding these. And I guess our issue obviously is, and Justice Scholar and Justice Welch can chime in with me, obviously these were issued at different times, but in November, and obviously 30 days have not passed to file any motions for rehearing or anything such as that. So obviously that causes a little bit of concern. That's correct, your honor. They're not final decisions at this time, but they were recently issued by the Supreme Court. And I guess my question to my colleagues and to both counsel, I guess, is it for judicial economy to allow counsel to cite and talk about these cases today rather than say filing something after the time has passed for any rehearing? I mean, we don't have a crystal ball. We don't know what the Supreme Court may or may not do, but in the vast majority, I mean, once they issue an opinion, I mean, that opinion holds and moves forward. So I kind of open it up to my colleagues about how they would like to proceed today. Justice Welch, I'm inclined to hear what they have to say with regards to the cases, with the understanding that this is all in flux still, right? But I would like to hear their take on the cases, obviously, as it relates to the case before us. So that's where I'm at, but I would defer to my colleagues as well. I agree. Okay. Yeah, I mean, quite honestly, we may have beat this dead horse, but that makes more sense to me today in how to proceed. Again, I give it a 99.9% chance that these cases are going to be fine. So barring some something that goes haywire, we'll deal with that if that does happen. Your Honors, would this court want supplemental briefing if there is a change in 30, 35 days, or will our oral arguments suffice? I would think that if, again, if it happens where the Supreme Court did a rehearing and changed or did anything, then that could be brought to our attention. Then we can maybe address it again. But I think moving forward today, I think Justice Scholar is exactly spot on, allow you all to address them and how they apply to the facts of our case today. And again, if something goes haywire, well, then we'll deal with it at that if that's acceptable to counsel. All right. So we probably spent more time on that than needed. So with all that being said, go right ahead with your oral argument. May it please the Court, Counsel, Assistant Appellate Defender Ntunnam on behalf of Mr. Ruben Corzine. There are two arguments on appeal. I will try to address both, but the focus, again, will be on the first argument. And I'll jump right in. So Mr. Corzine's 50-year sentence in prison is excessive considering, to name a few, his admission of guilt in an open guilty plea, his willingness to take responsibility for his fiancee's death, to attempt to minimize the pain the family would go through by sitting through an extensive trial, of course, his extensive mental illnesses, his need to support his children, and the demonstrated potential to learn to live with his mental illnesses by continuing to receive treatment. Accordingly, he asks this Court to reduce the sentence closer to the minimum or to remand for resentencing. Although trial courts have discretion in imposing sentences within the applicable sentencing range or the statutory limits, this discretion is not unfettered, absolute, nor unlimited. A trial court abuses its discretion when it fails to give adequate consideration to pertinent mitigating facts and the constitutionally mandated objective of rehabilitation. And this Court reviews sentences for an abuse of discretion. And here, Mr. Corzine's first argument is preserved for review, where plea counsel argued in his motion to reconsider sentence that the Court should reduce his 50-year sentence due to the circumstances in the case and the factors of mitigation present. So, turning to the factors and mitigation, first, the trial court erred by failing to take or failing to find Mr. Corzine's remorse, his willingness to take responsibility, and his open guilty plea as mitigating. Again, to note, the trial court found no factors in mitigation in this case. So, the Court found no factors existed. But admitting guilt is the first step towards rehabilitation. And as such, the trial court should have considered it a factor in mitigation and found that it calls for at least some grant of leniency, especially when Mr. Corzine entered a plea of guilty without any agreement or any concession from the state. Here, the state sought the maximum, and Mr. Corzine, again, did not receive a single concession. And that should count as some mitigation or mitigation. What did not change throughout the case is that it was his wish to not go to trial. Even in the midst of his lengthy fitness matters in the pre-plea hearings, he didn't want to put Jennifer's family through that extensive trial. Further, as this Court knows, our criminal justice system is a system of pleas. A guilty plea deserves some mitigating weight. And considering that his guilty plea was here in a result of accepting guilt, accepting responsibility, and considering his mental illnesses, a 50-year sentence is excessive. Further, it's not a novel idea or a new concept to find remorse as mitigating. Courts have done that in Illinois, finding a showing of remorse to be a factor in mitigation. Counsel, as the state points out in their responsive brief, the defendant himself never gave a statement of remorse, never gave a statement that he didn't want to put the family through the trial. That was the statement of the defense attorney, correct? Well, yes and no, Your Honor. So at the sentencing hearing, he didn't give a statement in allocution. But the trial court gave him an opportunity at the motion to reconsider sentence, and that's where he did express remorse. Further, as Mr. Corzine addressed in his reply brief, he was represented by counsel. And counsel states on the record that he had numerous conversations with Mr. Corzine, and Mr. Corzine's wish to not put Jennifer's family through the trial, that was a constant. So counsel is making this representation to the trial court, Mr. Corzine is being represented by counsel. So there's no, he isn't actually able to, you know, represent himself when counsel is there. Counsel was the one that made those representations. And again, it was based on the conversations with Mr. Corzine. So that's in our reply brief. I don't have the exact pages, but it is in a reply brief. So considering the fact that he did express remorse in the motion to reconsider, and defense counsel or plea counsel's claims to the court after significant conversations with Mr. Corzine, we believe that the record shows his remorse, that the fact that the guilty plea was a result of his wish to take that responsibility and to save Jennifer's family from a trial. So with that, the fact that the trial court found no factors in mitigation was there. Turning to the second factor in mitigation that the trial court should have considered is Mr. Corzine's extensive mental illnesses. So his extensive mental health history. The record shows that by the time of sentencing, everyone related to this case recognized or knew that Mr. Corzine was suffering or had been suffering from multiple mental illnesses. So we have that extensive report from Dr. Cuneo. That's the January 18, 2021 report about his mental illnesses and how that, again, it didn't amount to the level of insanity, but how that affected him at the time of the events. Which the court did take into account and found him but mentally ill, correct? That's correct in the sense that the court found him guilty but mentally ill. But the court also says that it found no factors in mitigation. So that's an explicit claim from the court saying guilty but mentally ill, but again, there's no factors in and our argument is that the extensive mental health issues, the extensive mental illnesses should account as mitigating in this case. And again, the state's in its brief as well, but each case is specific to the defendant in the case, to the individual in the case. And in our case, we have, again, the trial court at least acknowledging that his mental illnesses affected him at the time of the offense. But our argument is that this mental illness was an overarching mitigating factor as well that should have resulted in a lesser sentence. And again, there was no contention that mental illnesses existed in this case, that everyone in the courtroom recognized this to some degree. And the problem in part is that the trial court didn't consider his ability to be rehabilitated after this long prison sentence. So even with a minimum of 20 years in prison, luckily because of the guilty but mentally ill order that the court entered in Mr. Corzine's case, he will be receiving treatment, check-ins, updates, medication, his injections throughout his prison sentence. So whether it's 20 years or 50 years as it currently stands, he'll be receiving a consistent treatment, medication, and being able to develop these habits that he wasn't able to accomplish before. As this court knows, Dr. Cuneo found, and Mr. Corzine states as well, that he self-medicated before with drugs and alcohol, with substances. But now in IDOC, and again, luckily with the self-medicating with drugs and alcohol. And plea counsel actually recognized this. Plea counsel stated on the record that with the proper injections and medication, he recognized that Mr. Corzine was stabilized, was not acting up, was not having issues, that he was able to have these conversations with Mr. Corzine. So the optimism was shown by plea counsel that he could be rehabilitated by developing these habits with consistent treatment. Counsel, I'm going to interrupt you because I know we're running out of time. I would like for you to touch a little bit on the effect of People v. Johnson with relation to this case and your second argument. Yes, Your Honor. So People v. Johnson and Rettliff, they talk about plein air, the second prong, and they talk about the 604, the rule, Rule 604D. So if all else fails, I know I see my time is up. Go right ahead. Okay, just to mention, so even with that second prong, plain air, we still have first prong, plain air. And even with Rettliff where the court discussed how maybe issues that are not contained in the 604D motion can be waived, in our case, we argued ineffective assistance of plea counsel. And with ineffective assistance of plea counsel, our argument was that counsel should have put the improper factor issue in the motion to reconsider sentence. So even if second prong, plain air doesn't exist, we still have first prong. And even if first prong, plain air doesn't work, because again, if this court finds Rettliff to be applicable in our case, we still have ineffective assistance of plea counsel. And the issue with the ineffectiveness was the fact that counsel didn't argue this, the fact that counsel accepted the trial court of the states finding of aggravation that this inherent factor of death or causing death or resulting in the death, that the plea attorney actually accepted this as a factor in mitigation, which was an inherent factor. So that would be our argument, is that the ineffective assistance of counsel argument still saves that second argument. And I'll come back and rebuttal with- But also in the plain air analysis, the first step is to determine whether any error occurred at all, correct? That's correct, your honor. That's correct. Before we move on, and obviously, as you said, you're going to have your time for rebuttal, Justice Scholar or Justice Welch, do you have any questions? Not yet. No. All right. Thank you, counsel. Thank you. Ms. Seaver, go right ahead. Okay. May it please the court, counsel, my name is Jenna Seaver, counsel for the people of the state of Illinois. Defendant brutally murdered the victim, his girlfriend, when he stabbed her 37 times. 37 times. He stabbed her so hard and so much that he actually bent the knife. And then when he was done stabbing her, he left her there to bleed out on the floor. If you look at the people's exhibits, A and B, I mean, the carpet is soaked in her blood, her clothes are soaked, her hair is soaked, there's blood on the walls, there's blood on the door. This was a heinous, heinous crime. And what does he do after he's done? He walks down the street, smokes a cigarette, makes a phone call while she's lying there bleeding to death, with no chance of survival after he stabs her 37 times and then leaves her there. And when he finally does come back and he calls the police, there's no chance of survival for her. And why did he do this? Because they got into an argument and she, quote, pushes his buttons or pushed his buttons. A mother of three sons, a sister, a daughter, a woman who had her whole life ahead of her because she pushed defendant's buttons and he decided to stab her 37 times. Now that is the seriousness of this offense and the most important sentencing factor and why defendant rightfully received a 50-year sentence in this case. Now regarding his sentence also, I think it's important to note that the defendant did use the term de facto life sentence in their briefing in an attempt to persuade this court give them a lower sentence and that is not applicable in this case because that is a term of art that refers to juvenile cases and defendant was in his 30s when he committed this offense. Also, defendant's whole argument on appeal is asking this court to reweigh the sentencing factors. This court cannot do that. There is nothing in the record that actually suggests that the trial court did not consider all the information in front of it. I will also note that defense counsel said that the trial court stated that there are no factors in mitigation. That's actually not correct. The trial court actually said and cited the statute for factors of mitigation and said I find no statutory factors of mitigation. The factors of mitigation that defendant brings up on appeal are not statutory factors including remorse or guilty pleas. I'm not arguing that those can't be considered but they're not statutory. The fact that the trial court said we find no statutory factors of mitigation does not mean that they didn't consider non-statutory factors of mitigation including remorse, guilty plea, the PSI. They actually specifically stated the defendant pleaded guilty at sentencing. They specifically stated they considered the PSI which would include information about his family, his age, his potential for rehabilitation. All of that was considered and defendant does not point to anything to suggest otherwise. Actually, his sentence was technically mitigated. The people asked for and he rightfully deserved the maximum sentence to be frank based on the brutality of this offense. But the trial court, considering all evidence in arguments and mitigation, decided to give him a sentence of 50 years incarceration. Regarding his mental health or his mental illnesses, to be clear, if it wasn't clear enough in the people's brief, the people are not disputing that defendant was guilty but mentally ill. What we are disputing is that the evidence presented to the trial court was just not enough to rise to the level of statutory mitigation, in particular, statutory factor in mitigation 16. So, defendant, based off of Dr. Cuneo's reports, they found that he was guilty but mentally ill because his mental illness played a major role in his actions at the time of the trial. Dr. Cuneo also said that he found it extremely suspect, that he said he heard voices even though he hadn't said that before and the hospital reports were not clear about that. He also said that defendant's mental illness did not affect his ability to understand the nature of his acts or conformance acts to the requirements of the law. That is required to find statutory factor in mitigation 16. The trial court can consider mental illness as a non-statutory factor and again, there's nothing that the defendant points to to say that they didn't consider it as like a non-statutory factor and again, he had a mitigated sentence. It was 10 years below the maximum even though this crime, again, would have justified the maximum because of the brutality of stabbing his girlfriend 37 times. Also, regarding the second issue, I would first say that there is no error at all in regarding the second issue. As I started here relating the facts of this crime, this was a heinous, brutal, brutal murder and the trial court absolutely should consider and has to consider the circumstances of the offense, the seriousness of the offense. They can absolutely consider the manner in which the victim's death was brought about. The defendant kind of truncates what the Supreme Court, sorry, the trial court actually said. They said her death was brought about by 37 stab wounds so they were not focusing on the fact that she died. They were focusing on the horrible manner in which she died which is that she got stabbed 37 times and that absolutely needed to be considered because sentences need to be varied based on the circumstances of the stab wounds which elicited his 50-year sentence. And then, regardless of no error, so they were rightful to consider that. We also, of course, asked this court to consider Ratliff and Johnson. I will say based off just the Supreme Court, I think it's style manual that slip opinions can be cited so we do hope you consider it. I understand this court's reservations that it may not be final but we do hope you'd consider it especially that Ratliff, you know, any claim of error not alleged in the motion to reconsider. This wasn't considered or the second issue was not in the motion to reconsider so therefore, according to Ratliff, it's waived and plain error doesn't apply. If a plain error did apply, second prong plain error does not apply in this case because as Johnson says, that doesn't apply to improper aggravating factors and in that case, there was a factor inherent in the offense and they still said, no, that's not second prong plain error. First prong plain error can apply. In this case though, the aggravating evidence, it's not so closely balanced because the aggravating evidence so vastly outweighs any mitigation and again, there's nothing in the record to support that the trial court did not consider all the information that in front of it and presented to it. Everything that defendant brings up here on appeal was presented to the trial court. And not to kind of paraphrase what you said earlier, I think it's your main contention is there was no error anyway to get even to a first or second prong analysis, correct? That's correct, but also citing Ratliff and Johnson just to be thorough. And with regards to the ineffective assistance of counsel, we're going to stand on what we said in our brief, which is that trial counsel does not have to raise a non-meritorious claim or meritless claim, I should say. And in this case, it was meritless. Defense counsel actually even said it themselves. There's either sentencing or the hearing to reconsider said that we don't disagree that her death being stabbed by 37 times was a factor in aggravation. And defendant is not arguing that that statement was ineffective. They're effective not to raise it, but clearly trial counsel thought it was a meritless claim. So if there's no other questions. Questions? No. Justice Scholar? No questions. Okay, well this court, or the people asked that this court affirm defendant's sentence. Thank you. Thank you, counsel. Go right ahead with your rebuttal. Yes, your honor. To begin, I have a few points. To begin, if this court looks at page 154 to 150, I believe seven, it's the probation officer who prepared the PSI. She says that the hospital emergency room report actually indicates that Mr. Corzine had been hearing voices, was seeing dreams and visions. And the hospital report actually does state that. So it is in the hospital report. I know the state's saying it isn't, but it is in there. So that hearing, the hearing the voices, seeing the visions, that was relayed to the hospital. The trial court also noted in this case that, or it considered the friend. So Mr. Corzine's he stated that normally if Mr. Corzine is using drugs or on drugs, he's pretty truthful about that. Here he was adamant that he was not on drugs. And the emergency room hospital report showed that when they tested his blood at 4 a.m. in the morning on the day that Jennifer died, there was no drugs in the system. There were no substances in the system. That he was hearing these voices and hallucinating and the visions and things like that, that he was reporting that without self-medicating, so without the drugs. As to the second argument, that's correct, Your Honor, with the fact that there first has to be an error. So the specific quote is, quote, conduct caused the death of Jennifer Phelps. 37 stab wounds resulted in her death. That's on page 179. That's what the trial court stated. So as the state mentions, if the court was just addressing the nature of the incident or the 37 stab wounds by itself, the actual acts, the court could have said that. But the court specifically says that Mr. Corzine's conduct caused Jennifer's death and that the stab wounds resulted in her death. And that's the error that we're discussing here, the double enhancement. As the state does in its brief, the court could have also just focused on the blood or the stab wounds or the knife being bent. But the court specifically stated that the conduct caused Jennifer's death. And that is the double enhancement argument. That is the error that was present here. And to add to that, the plea attorney, so Mr. Corzine's own attorney, says that he did not disagree with the factor and aggravation that obviously Jennifer died as a result of the actions of Mr. Corzine. So again, we're talking about the death, the end result, and that is a double enhancement. So the argument here is that this by itself is error, the double enhancement, the focus on the end result, the death, which is automatically incorporated in the first degree murder charge, the statute, the charge, the conviction, it's all in there. The court, the state, and even plea counsel focused on the death and that is error. So unless this court has any other questions, we ask this court to reduce the sentence closer to the minimum or remand for resentencing. Well, to your points, counsel, obviously when reviewing these types of issues, the reviewing court is to look at the entire sentencing hearing as a whole. Obviously, if there are some improper things said, you need to look at that, but you look at everything as a whole. The case law is clear that a trial court, when sentencing, is able to make comment. They just don't sit there and not say a word. I did a lot of sentencing hearings. I look back of some of the things I said over the years at a sentencing hearing, but the trial court should be able to take things into account and make comments regarding the nature of the offense and the facts of the offense and how, I mean, really giving a sentence and to explain why. Correct? That's correct, Your Honor. And the court could have done that here. The court could have said, the focus here is the nature of the crime itself. 37 stab wounds occurred. As the state mentions, the knife was bent, there was blood in the carpet. The court could have said that. The court could have extensively talked about the acts themselves, but the court here chose to state that it's the conduct that caused death, that resulted in death. And that is a factor that's inherent in a first-degree murder charge. So, that by itself is error. So, if the court, as we discussed, if the court just talked about the stab wounds, talked about the facts surrounding the death of Jennifer, that would not have been an inherent factor. But the court here specifically talks about the death. Further, the court, as we mentioned in our briefs, the court marks, hand marks in the actual judgment, the judgment order, that it found serious bodily harm. I believe that's on page 17 of our reply brief, where the court specifically mentioned this. So, the court's mind was on serious bodily harm, on death, on the end result. And that is a double enhancement. Okay. Well, thank you. Thank you, Your Honor. Before we let you all go, Justice Scholar or Justice Welch, do you have any final questions? No questions. Well, counsel, thank you so much. We will take this under advisement. We will issue an order in due course. As I said earlier, we wish you a great day and hope you both have a great holiday. Thank you, Your Honor. Thank you.